The last case today is 413-0585, and re Raheem M., show appearance of the appellant, Anastasia Brooks, for the appellate, Ms. Lang, you may proceed. May it please the court, my name is Arden Lang, I represent Raheem J.M., who seeks redress from his adjudication of delinquency and the subsequent commitment of Raheem to the Illinois Department of Juvenile Justice. My intent today, with the court's indulgence, is to concentrate on argument 3, which is the overarching argument about sentencing, but of course I will answer any questions that I can on any subjects the court is interested in besides that particular issue. Well the one question I have is, isn't Lutz overruled statutorily by the addition to section 116-2 of subsection C, talking about motions and arrest of judgment, being now judged in a different standard than they were judged on in the Lutz case? Could you elaborate on that? Well yes, it used to be, and I remember being a victim of those days, that counsel could wait until a case was tried and a defendant was convicted and said, oh wait a minute, this charging instrument was defective, and it might be, had the motion been made in advance, it might not be technically as good as it should be, and of course the motion to arrest of judgment, I forget that, Smith, I think was the infamous reckless homicide case, where this court said, oh yeah, that's right, and it was vacated or reversed, and the legislature finally got wind of this and said, this can't be right, and if you have a legitimate complaint about the sufficiency of the charge, and knowing what the charge is, and whether or not it can stand to constitute ultra-fraud, acquit or convict, raise it in advance of trial, because the standard post-trial is going to be, if not impossible, pretty close. I agree with all that. I thought that's what you were getting at, but I didn't want to presume that. I was typically oblique, counsel, I apologize. No, no, not at all. You were very specific, and I was thinking more generally, so I apologize for that, Your Honor. Clearly, the best thing to do, the best practice for any attorney is to meet the charge initially, and to either seek a bill of particulars, or to challenge the charge. But that didn't happen here, and as you alluded to in your exegesis on the record, there still remains something that can be done afterward. I'm not sure, there's no evidence on this record that anyone was sandbagging, and I know that that's not an element either. Actually, that's a pretty good summation of the rule at the moment. Okay. So, what I have attempted to address in my argument one, the concept of prejudice that might occur as a result of this charge being most likely insufficient, or would have been considered most likely insufficient if it were brought to trial. But you wanted to focus on the sentencing issue with respect to the statute and what's required, and I'd like to hear your argument on that. Certainly. But I think we're up on lots now. All right. With Justice Stegman's permission, then I will go on. Yes, please go ahead. Oh, sure. As far as sentencing, as the court knows, in 2012, the juvenile statute now requires that in addition to the statutory factors that are mandated for a court to consider before sentencing a child to the Department of Juvenile Justice, the court must also consider the least restrictive alternatives. And this case is sort of a poster child for what could happen if the presentation to the court by court services or by the prosecutor is not explicit enough as to what the evidence is that would lead the judge to make a determination that the least restrictive alternative in this particular case would be to send the child to prison. My argument is that there was not enough information for the court to make that determination, and that combined with or even standing alone from the certain sentencing considerations that the court appeared to have made, which I would suggest are improper and it's unclear from the record whether those improper suggestions... Are you talking about the father's criminal record? The father's criminal record, police contacts, the fact that... There's no case, though, that holds that the court is not able to consider police contacts, is there? No. The form order that the trial judge signed recited the proper language from the statute, but the social history report from probation didn't really mention any alternatives. There were some treatment alternatives that at least were mentioned, but no other residential type... And there was no evidence put on after the sentencing hearing, was there of any... No, there was not. Wasn't there, after the sentence was imposed, was there a petition for reconsideration? Yes, there was a hearing. There was a very detailed amended motion to reconsider sentence, which... The trial court denied that? The trial court denied that. Can we consider the matters in your appeal here before us challenging the sentencing of the matters which were presented and discussed at the hearing on the petition to reconsider the sentencing? I've been thinking about that myself, Your Honor, before the hearing. Is that a trick question? Huh? Is that a trick question? No, it's not a trick question. I think it can be considered, but this was a case where the court had made its decision and is asked to reconsider a decision. I think that the court had made up its mind. I'm not saying that the court was intransigent in its decision. For instance, if we were to agree with you to reverse and remand for consideration of these statutory standards, are there any other alternatives? Wasn't that discussed at the hearing on the petition to reconsider? Specifically, the minister at the church, Mr. Porter? Right, and I think that what was said regarding Mr. Porter, his testimony, and then if you look at what the trial court said about his testimony, I think there isn't enough there that the court made a rather summary statement. Where were you, Mr. Porter, when all this was happening to Rahim? What's the matter with it? I'm going to tell you what I think is the matter with it. We don't have on this record that the Reverend Porter, who was the child's uncle, had even had knowledge of what went on. I would say that a lot of parents don't discuss difficulties with their children, with other members of their family. We don't know that the mother went to Reverend Porter and poured out her heart. We don't know that he was cold to the idea of helping the child. He may not have even known about it. Did he testify? He did testify. Were any of these questions asked of him? No, I'm not sure that they needed to be asked of him. Well, I was a general court judge for a long time in Champaign County, and I remember looking at family backgrounds and histories, and people would show up, and my thought would be, you are prepared now to do all this good stuff? Where have you been? The underlying question seems to me is, why should I accept that you're likely to make a difference in the life of this kid now when you've had an opportunity, perhaps, or should have had an opportunity, perhaps, in the past? Weren't there, you were AWOL, or not interested, or no one else talked to you, and what is there to believe that you're now going to make a difference? Of course, this was the first time he was ever charged with an offense. Exactly. That's the first thing. This is his first criminal charge. So that's one. Two, if you look at his testimony, Reverend Porter's testimony, he is deeply involved with helping at-risk youth. So it's not as if a kind relative comes in and says, I'll take the kid into my home, or I'll do whatever, I'll take him to the ballgame. I mean, this is someone who has put his money where his mouth is, and has been trying to help youth, and would have, therefore, a connection with this child, perhaps, and maybe some skills in dealing with him. Did the court really find that Reverend Porter was not a proper alternative, or it seemed to me to be more of a situation where too little, too late, I'm not going to give you the opportunity to help? It wasn't so much about you're not an inappropriate alternative. Yes, I think that's right. I mean, although the court did say, you know, where were you, I think that the court's whole feeling was that the court was out of options, but as this record so clearly shows, there were no options that had ever been tried with this child. And not to say that the child hadn't done something criminal here, but nevertheless, to never have offered any services, I mean, from this cold record, we can't see that any services have ever been offered to this child, and it seems to me that something should have been done in the interim, because the crime itself, while certainly not anything to be applauded, and it's something to be condemned and behavior needs to be corrected, nevertheless, it's not the kind of crime that signals that, even though no services have been offered, that this child should immediately be sent to the Department of Justice. What about the disciplinary record at the high school? To what extent is that something which can be considered by the trial court? It absolutely can be considered by the trial court, and it was considered by the trial court, but that is one of seven statutory factors. I know that each factor doesn't have to be given equal weight, I'm not suggesting that, but that there were other factors which could have been considered to balance that off in the sense that, I hate to be a broken record, but there were no services offered to this child. We don't know that any assessment has ever been done, and that's what that CANS is. It creates a process for assessment of the child. The child has not been assessed. In the SIR, the child is interviewed and said that he's never had any. If we can't properly consider the discussion, presentation, the arguments presented in the testimony and petition to reconsider, why wasn't the trial court given a full record of the circumstances surrounding this child at that point? Well, I guess part of the, I guess a major question here is, whose responsibility is it? First. Second. Third. The Supreme Court has held that sentencing in a juvenile proceeding is like sentencing in an adult proceeding, and forfeiture applies to arguments not raised. Well, I think, are you talking about the sentencing or the motion to reconsider? Both. Both. Yes. In other words, the trial court could have granted the motion to reconsider and changed its sentence, could it not? Yes, the court absolutely could. And I suggest should have. Well, so isn't what we're reviewing is the total picture of both hearings, not just the first? Yes. It's the denial of the motion to reconsider, which is really the issue on appeal, isn't it? No. I don't think so, Your Honor, and I'll tell you why. I don't think so. I'm just thinking of all the notice of appeal cases before this court, and I'm not trying to open a can of worms. All the which? Notice of appeals? Is that what you said? Yes, and notice of appeal issues that come before this court, and I don't know, but it's a daily basis, but quite often where our office tries to amend the notice of appeal to reflect the nature of the matter being charged, and we used to write motion to reconsider sentence, and now we include everything. So based on that, I would say we're not just looking at the motion to reconsider sentence. But the whole package, to be more clear. Yes. And I would still say that whether some evidence was presented by the defense and whether we could have had a three-day hearing put on strictly by the defense, it's still the responsibility of the prosecution in this case and the court services personnel who are arms of the court to give the court a fair amount of evidence on which to face the decision. If your argument to this court is that the trial court didn't properly consider Section 5-750 about the least restrictive alternative, shouldn't that argument have been made at the trial level? And was it? Yes, I think it was. Because there is talk about it goes through the seven factors, which are part of A as opposed to the second part, which deals with least restrictive alternatives. But it does talk about community-based sentences, and it does list D1 to 1 and 2 have a much more extensive list of services that could be available to the minor. And E, which is another part lacking from the determination made here, is that there were no services available in DOJJ that were pointed out to the trial court. The reason I mention this is if you're arguing to this court essentially plain error arguments at sentencing, this court in People v. Rathbone in 2003 and People v. Montgomery in 2007 and People v. Ehlers in 2010 has addressed the same kind of arguments in criminal cases, claims of plain error because of some sentencing defects, rejected them all, following People v. Reed and the statutes governing how that works. Well, I believe that the amended motion hits just about every point and from which the least restrictive alternatives – well, let me put it this way. The least restrictive alternative determination in a lot of ways is the result of what has occurred with the factoring argument. So I don't think you need to separate one out. For instance, specifically the argument about how the court has explicitly rejected as a basis for plain error review in criminal cases. Right. To the extent that we're talking about here, are you raising argument here that we should reverse the trial court because it considered a factor that's inherent? Well – oh, you're going to the – okay, the factor inherent? Yes. Yes, clearly that was not raised. But you're asking us – Yes, to consider it. I think that when you – the court's determination in this case, that there were no other alternatives but to send this child to – and I know that my light is on. It's okay. Go ahead and put your hand up. Thank you. That the court's determination that there was no alternative but to send the child to the Department of Juvenile Justice is based on all of – of everything that went on. And I – you know, I'm not asking the support to reverse based solely on that, but on the entire cumulative sentencing determination, which I believe was not based on evidence. Thank you, Counsel. You have a chance to address this again. Ms. Brooks. Thank you, Your Honors. May it please the Court. Counsel. Counsel. My name is Anastasia Brooks, and I represent the people in this case. First of all, I'd like to very briefly address the charging instrument issue. The state's claim is that under the more lenient, deepest Vincenzo standard, the case that applies most closely is the Caliendo, which is the battery case. There, the defense at trial had consisted of a claim that the defendant was denying that the victim had correctly identified him, and that's very similar to sort of the defense that the respondent relied on in this case. And so if there's no attempt to deny that McGuire was either bodily harmed or that throwing a chair was an insulting or provoking nature, here that is distinguishable from the Rowell case. There, there was a misguided attempt by the defense to argue that there was a flaw in its felony theft charge because they tried to say that it was not a continuing course of conduct when really what should have been charged was the multiple thefts being in furtherance of single intention or design. The problem is they didn't know that. It was in a separate statute. It wasn't charged that way. So the defense was essentially without knowledge of the appropriate means of trying to accomplish what they wanted to do. But here there's no indication the defense was prejudiced because they were not staking their defense on whether or not Mr. McGuire was bodily harmed. And in fact, the charge did say that he was the person harmed, not a person battered, so there was at least some indication in the charge that that was what was being alleged. And it's also the claim about whether prior prosecution is barred can be proved by resort to the record. So both standards are met. And with respect to the sentencing claim, the trial judge did remark, the trial court agreed that it had to look whether there was some term to be less confined alternative, then concluded that it's not possible when you have someone like this. So there was, the trial court was making an effort to comply with the amended statute. The question is whether there was evidence there and whether the evidence supported the reasons why that these other less confined, less restrictive alternatives to DJJ were, in fact, unavailable for this respondent. Was there any evidence introduced at his original sentencing hearing of any alternatives to DOJJ placement? Well, evidence in the sense that there was the social investigation report. And what efforts did the probation office make with respect to locating an alternative placement for him? There were specific services, service providers identified in the probation department social investigation, social history investigation report. The community providers included those that were involved in providing substance abuse treatment and counseling services. What other residential alternatives were provided to the court in the social history? Specifically residential treatment options. They referred to Prairie Center and Crosspoint and Center for Children's Services, and I'm not sure if those were residential facilities. The record doesn't say as far as I know. Do we know if it was evaluated by any of these entities? Was he evaluated? I'm not sure if that's correct or not. Was any type of an assessment done for this child? You mean a formal assessment? Like this PANS assessment, any type of assessment. Did the social services department perform any type of an assessment of this child at Prairie Center? I don't have an answer for that. I'm sorry, Your Honor. One thing the report did mention is the respondent's father was currently incarcerated until August of 2019. So that's one alternative crossed out. Number one, the child never had a relationship with the father or didn't for a very long period of time. Isn't that true? I'm not sure of the answer to that. But as a natural parent, it would have been a possible placement alternative that was to be considered. While we're on the subject, the child's social history report reflected the entire criminal history, which was lengthy, of his father. Do you have any idea why that was included? Why was that relevant to this child, his father's criminal history? Well, I'm not in a position to speak for the probation department, which prepares the report. However, if the respondent wanted to object to the trial court's consideration of information and that the respondent would take the position as irrelevant, then that objection has to be articulated in the trial court in order to preserve that issue for appeal. Instead, what the trial court did was responded to the defense attorney's remarks about the father's criminal history and did not use that in aggravation as a reason for sending this child to prison, but did address that. In the spirit of humane concern, the trial court is permitted under the Juvenile Court Act to address a minor, for example, who has a long history of criminality, for example, and try to dissuade them, exhort them from following in their parents' footsteps, for example. That is something that should be permissible under the Juvenile Court Act for a judge to do. I would agree that perhaps the social history report could state the father has lengthy criminal histories, currently incarcerated, those types of things. But this looked like the father's PSI to me when I read it. It didn't look like the child's PSI. It looks like an adult PSI that the father's entire criminal history laid out for the judge to look at. I didn't understand why that was done. Apparently you don't either because, like you said, you don't speak for the probation department. And if this court wants to admonish probation departments to be careful what they include, then the risk could be that probation departments will be wary about including enough information for fear that it might be deemed prejudicial. It's better, in the state's opinion, for the probation office to do a thorough investigation and present more information to the extent that a defendant or respondent in a criminal case or a juvenile case of this sort believes that to be irrelevant and should not be considered, that objection should be raised and it could be stricken from the report.  Okay, go ahead. Okay, I'm sorry. That's the state's position on whether enough or too much should be included in the report. The trial court then relied, and this is the reasons why the less restricted alternatives to DJJ were found to be not available for this minor, cited the student disciplinary reports that were attached to the social investigation report. And it showed an extensive history that the minor had of disrespect of authority, disruption in the school setting, and insubordination. And that culminates in the violent offense of throwing a chair in the cafeteria. So there is an escalation of behavior and also things like disrespect, disruption, and insubordination mean that it is not conducive for this minor to participate in something, for example, like counseling where they will have an adult person who is going to try to get them to modify their behavior. How would they know? They never tried it, did they? Well, as far as I know, the defense may be correct about that in terms of whether this court should attempt to establish a rule, for example, that no sort of these prison sentences for minors could be instituted unless and until services like counseling and substance abuse are provided. That decision should be really left for the legislature to make. And if the legislature... You made the argument that counseling wouldn't work for him because he showed disrespect to authority. That's what your argument was. Well, the child court's position is that, in reliance on that, and the state's argument is that that history of disrespect and insubordination was so extensive. Wasn't it talking out in class? I'm not sure of the nature of the exact incident. That's the way I read it. He was speaking out in class and he was disciplined for it. How many 17-year-old boys in high school do you think have done that? I don't have in front of me the entire report in terms of what specifically the minor had done. I believe it was more than just simply talking in class. That it had escalated to more serious things that would, for example, warrant in-school or out-of-school suspension. But that's my recollection. I'm not sure exactly what he was alleged to have done in the school setting. But it was serious enough for the child court to consider this to be a minor who would not be amenable to counseling, for example. So if the minor is not going to be amenable to counseling, then it wouldn't serve any purpose to try to place that minor with another adult like this Reverend Porter, for example, even on reconsideration. Because the probation is not going to be an appropriate sentence for this minor. And I understand that if the minor has not had that chance for probation, we are talking about a violent crime, though. And that the amendments to the Juvenile Court Act are intended now more towards protection of the public from the consequences of a minor's criminal behavior. So it is a more serious situation because the prior misconduct has escalated into violence. And so that is... Now he wasn't armed. He didn't have a knife. He didn't have a gun. There was a school brawl. Other people were throwing chairs. He saw his friend get hit by a chair and he threw a chair. That's not the kind of violence I think about when I'm thinking about violence. It's technically... I can see where you would technically make an argument about violence. But we're talking about a school fight with no weapons at all. Well, the chairs are... The child court viewed this type of behavior in a school setting as being a very serious situation. And there is some mitigation in the record. For example, the minor accepted responsibility. And the minor's participation might not have been as overly egregious as... He had no intention to hit the teacher with the chair. But the teacher was in fact hit. I understand that. But his intent was not... It's not like a case where a kid goes up and hits a teacher, punches a teacher in the face, anything like that. He threw a chair in the general direction of the student who was involved in the brawl.  There's no question about that. Well, the state does agree that as far as violent crimes go, this was not the most egregious situation. And there is mitigation in the record with respect to this crime and this respondent. However, there is a lot of aggravation arising from this prior disciplinary history, which is what the child court had primarily relied upon. Were others involved in this incident charged? I'm not sure of the answer to that, Your Honor. I believe they tried to chase down two minors. And they might have apprehended two. And I'm not sure what happened to the other minor who they chased down. So, I have no further prepared argument. I'm entertaining any other questions. Okay. Thank you. And the state requests this court to affirm. Thank you. Thank you, counsel. Ms. Lang, any rebuttal? Can I start with a question for you once we get up there? I'll let you get up there first. You ran out of time in your opening argument, and I wanted to ask you this question. The minor's lawyer who tried the case was not present at sentencing. Exactly. But I could not find anywhere in the record where a motion to continue was made. I couldn't either, Your Honor. The only thing I can say about that, because I did go back and check, it was in the motion to reconsider. I saw it there. And it was not contradicted at the motion to reconsider by either the trial court or the prosecutor. What was in the motion? Well, there is an allegation, or not an allegation, in explaining why the motion to reconsider was filed and had certain, you know, all these extra points. The, Rebecca Parkhurst, who was the original trial counsel and then came in in the motion to reconsider, said that she had been too ill to come to court and that a motion for continuance was denied. But I don't see anything. Now, this may have been, you know, off the record. So who was counsel for the juvenile at the hearing? At the hearing, Gloria Morris.  Gloria Morris, who was also a PD. Well, but isn't this kind of a two-edged sword? Wouldn't that make the trial judge all the more arguably receptive to, gee, here you are now, Ms. Parkhurst, so okay. Tell me now what I would have heard then. I think the judge was receptive in the sense that she allowed Ms. Parkhurst to put on the testimony of Mr. Porter. I also want to say in response to a question of yours, Justice Steigman, that the prosecutor was on notice. When the prosecutor got the second amended or the first amended motion to reconsider in the mail or, you know, was sent to the prosecutor, that there were challenges being made and the prosecutor could have called someone in to put on extra evidence and did not. So the prosecutor could have called the probation officer and the probation officer could have gone on and on and on. It could have called in a police officer. It could have talked about what these supposed police contacts meant or whether anything came of it, whether, you know, none of that was done. So I don't think it, you know, I think that Ms. Parkhurst did a pretty good job of trying to get the trial court to change her mind. Okay. Thank you, counsel. Thank you.